IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LISN, INC., et al., ) | |
| ) | Case No. 1:02-CV-01646 |
| Plaintiffs, ) | |
| ) | Judge Ann Aldrich |
| v. ) | |
| ) | Magistrate Judge |
| GULF UNDERWRITERS INSURANCE ) | William H. Baughman, Jr. |
| COMPANY, ) | |
| ) | |
| Defendant. ) | MEMORANDUM AND ORDER |
| ) | |

Before the court is the Report and Recommendation ("R&R") of Magistrate Judge Baughman [Docket No. 109] on the motion for partial summary judgment filed by plaintiffs LISN, Inc. ("LISN"), Donald Sanneman ("Sanneman"), Kevin Sowell ("Sowell") and Donald Vanke ("Vanke") [Docket No. 65] and the motion for summary judgment filed by defendant Gulf Underwriters Insurance Company ("Gulf") [Docket No. 67]. Also pending are Gulf's motion to bifurcate and stay [Docket No. 44], three motions to strike by Gulf [Docket Nos. 69, 77, 78], and the Rule 56(f) motion of LISN, Sanneman, Sowell, Vanke, and Thomas Jones ("Jones") [Docket No. 73]. LISN, Sanneman, Sowell and Vanke have filed objections to the R&R [Docket No. 111]. For the following reasons, the court adopts the R&R in its entirety, grants Gulf's motion for summary judgment, denies plaintiffs' motion for partial summary judgment, denies the remaining five procedural motions as moot, and enters judgment in favor of Gulf on all claims.

### I.  Background

This case concerns an insurance policy issued by Gulf to LISN Holdings, Inc., the parent company of LISN, and whether that insurance policy provides coverage against claims brought by Kenneth Moore ("Moore") against LISN, Sanneman, Sowell, Vanke and Jones in courts in both

Maryland and Ohio. The plaintiffs seek a declaration that Gulf is obligated to cover their defense against those claims under the insurance policy, indemnification for defense costs, as well as a bad faith claim against Gulf for its refusal to provide coverage. The court adopts the summary of facts in the R&R without modification, as Magistrate Judge Baughman has stated the relevant facts in a clear and concise manner. Briefly, Moore started a business, L.B. Price Communications ("Price"), in Maryland and eventually entered into an agreement with LISN to expand his business. As part of that agreement, LISN obtained 49% of the stock in Moore's business, Jones obtained 25% of the stock, and Moore retained 26%. Moore was also retained as Chief Executive Officer of the business he started, with a condition that he could not be removed without the agreement of all shareholders, including himself. LISN appointed three directors to Price: Vanke and Sowell, who were LISN officers; and Sanneman, former chairman of LISN's board of directors. Together with Jones, appointed as President and Chief Operating Officer of Price, the parties went into business together.

That relationship began to deteriorate in October 1999. At board meetings on October 21, 1999, November 12, 1999, and November 30, 1999, LISN expressed concern about Moore's conduct, threatened to terminate him and file criminal charges concerning that conduct, and sought to negotiate a buyout of either Moore or LISN and Jones' shares. Then, on December 16, 1999, the Price board of directors voted to terminate Moore and for corporate dissolution. On January 5, 2000, Price's shareholders met and voted to dissolve. Moore brought suit in Maryland state court shortly thereafter in January 2000, while LISN filed a complaint against Moore in Ohio state court at about the same time. Moore responded to the Ohio litigation by filing a counterclaim, cross-claim and third-party complaint (the "Ohio counterclaim") in May 2001 in which he asserts claims roughly identical to those made in the Maryland litigation. The plaintiffs gave Gulf notice of the Maryland litigation in May 2001, and

Gulf refused to provide coverage by a letter in July 2001. Gulf received notice of the Ohio counterclaim in June 2002 and refused to provide coverage by a letter in July 2002.

The insurance policy issued by Gulf to LISN's parent is a "claims made" policy, which covers claims made and reported to Gulf during a certain policy period. When LISN's parent was acquired by another company, the change-of-control provision in the Gulf policy was triggered, and LISN's parent elected to convert the policy into a six-year runoff policy. That conversion changed the policy period for the Gulf policy so that it ran from September 3, 1999 to December 14, 2005, and limited the policy's coverage for claims arising out of wrongful acts occurring on or before December 14, 1999. In other words, the policy covers any claim made between September 3, 1999 and December 14, 2005, so long as the claim is based upon acts occurring on or before December 14, 1999.

## II. Discussion

LISN, Sanneman, Sowell and Vanke have filed a number of objections to Magistrate Judge Baughman's R&R, but the relevant objections deal with three conclusions in the R&R: (1) that all of the claims at issue in the underlying litigation by Moore against LISN, Sanneman, Sowell, Vanke and Jones arise out of "wrongful acts" that occurred after December 14, 1999 (Plaintiffs' Objections 1, 2 and 3); (2) that Gulf is only obligated to provide coverage for claims arising out of "wrongful acts" occurring on or before December 14, 1999 so that Moore's claims are not covered by the Gulf-issued insurance policy (Plaintiffs' Objection 4); and (3) that Gulf is under no duty to advance defense costs to the plaintiffs if those claims are not covered by the insurance policy (Plaintiffs' Objection 5). The plaintiffs' first three objections concern questions of fact while the fourth and fifth objections concern questions of law.

Federal Rule of Civil Procedure 72(b) requires the court to review *de novo* any portion of a

-3-

magistrate judge's disposition to which specific objections have been made. Local Rule 72.3(b) requires that objections "specifically identify the portions of the proposed findings, recommendations, or reports to which objection is made and the basis for such objections." A district court "shall make *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id*.

Concerning the first three objections, the plaintiffs attempt to argue that (1) Moore's claims concerning his termination and Price's dissolution arise, at least in part, out of "wrongful acts" occurring before December 14, 1999, (2) Moore's claims are for more than just his termination and Price's dissolution and that those claims arise at least in part out of "wrongful acts" occurring before December 14, 1999, and (3) the plaintiffs never agreed that Moore's claims "accrued" after December 14, 1999.

As to the first objection, the court agrees with the R&R's reasoning that any acts committed by LISN, Sanneman, Sowell or Vanke prior to December 14, 1999, were neither sufficient nor necessary to give rise to any of Moore's claims concerning his termination or Price's dissolution. Put simply, Moore did not have any claim for termination or dissolution until the plaintiffs actually performed those acts, and those acts were not consummated until December 16, 1999 for Moore's termination and January 5, 2000 for Price's actual dissolution. Without those acts, Moore has no claims; therefore, only in the commission of those acts do Moore's claims arise, and because those acts were committed after December 14, 1999, Moore's claims for termination and dissolution are not based, in any way, on acts committed before that date. *See, e.g., Cincinnati Ins. Co. v. Fab Tech, Inc.*, No. Civ.03-CV-410-SM, 2005-DNH 096, 2005 WL 1492377, at *9-*10 (D.N.H. June 24, 2005); *Malmay v. Sherman*, No. Civ.A. 02-2294, 2003 WL 22077786, at *5-*7 (E.D. La. Sept. 8, 2003). The court denies plaintiffs' first

objection and accepts the R&R's findings on that question in full.

As to the second objection, the court agrees with the R&R's description of the situation. While Moore states *claims* for more than just his termination and Price's dissolution, all of his *claims* are based on those two events -- the same *nexus of facts*. And as previously discussed, because those two events occurred after December 14, 1999, all of Moore's claims arise out of "wrongful acts" occurring after that date, even if the claims encompass more than just wrongful termination and dissolution. Finally, as to the third objection, precisely what the plaintiffs agreed upon in oral argument is immaterial, because no party disputes the fact that the termination and the dissolution occurred after December 14, 1999. For those reasons, the court also denies plaintiffs' second and third objections and accepts the R&R's findings in full.

Plaintiffs' fourth objection concerns a legal question - - whether Gulf is obligated to defend against claims based on "wrongful acts" occurring prior to December 14, 1999. Specifically, plaintiffs argue that the insurance policy does not, in fact require claims to "accrue" prior to December 14, 1999. Plaintiffs' objection is not well-taken, as they are plainly incorrect about what it means for a claim to "accrue". In this case, "accrue" simply means the earliest date on which Moore could have made his claims in court. That is the plain language reading of Endorsement 13 of the policy, which limits Gulf's coverage to claims arising out of "wrongful acts" occurring on or before December 14, 1999. Moore could not have pressed his claims for wrongful termination, wrongful dissolution of Price, or any of his other claims on December 14, 1999, because *none* of the "wrongful acts" generating those claims occurred until *after* that date. The unambiguous language in Endorsement 13 makes that much clear. And just as a "retroactive date" will bar coverage for claims based on acts before that date, so too does Endorsement 13's cut-off date bar coverage for all of Moore's claims, which are based on acts after that

-5-

date, no matter that the claims were brought during the life of the policy. *Mueller v. Taylor Rental Ctr.*, 106 Ohio App.3d 806, 811, 667 N.E.2d 427, 430 (1995)

Plaintiff's final relevant objection concerns Gulf's duty to advance defense costs even if the claims are outside of the policy's coverage.[1] The R&R notes the general rule that an insurer has no duty to defend claims that are outside the policy's coverage. *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 159, 789 N.E.2d 1094, 1097 (2003). Ohio law also draws no distinction between the duty to defend and the duty to advance defense costs in this type of situation. *Am. Chem. Soc'y v. Leadscope, Inc.*, No. 04AP-305, 2005 WL 1220746, at *6-*8 (Ohio Ct. App. May 24, 2005). Plaintiffs cited three cases in arguing that Gulf should advance defense costs. However, the court agrees with the R&R's findings that each of these cases may be distinguished from the present situation.

Plaintiffs' first case, *Little v. MGIC Indemnity Corporation*, concerned an insurer withholding defense costs based on the policy's exclusion of coverage of claims where the insured persons engaged in dishonest or fraudulent conduct. 836 F.2d 789, 794 (3d Cir. 1987). The Third Circuit, however, held that the insurance company had to provide coverage, since the question of whether the fraud exclusion could not be determined unless and until the claim was adjudicated on its merits (as opposed to being disposed of through settlement) and a judgment finding the insured persons acted dishonestly or fraudulently was entered. *Id.* Plaintiffs' second case involved similar facts - - the application of a fraud exclusion as well as a "prior knowledge" exclusion where claims would be excluded from coverage if the insured persons knew about the potential claims while applying for the insurance policy and did not

---

[1] Plaintiffs raise four other objections to findings made in the R&R, but as the Magistrate Judge noted, those findings are relevant only if the court disagrees on the issue of whether Moore's claims are covered and whether Gulf must advance defense costs even in the absence of coverage. As the court does not disagree with the R&R's findings on those issues, the R&R's other findings and plaintiffs' remaining objections need not be addressed.

-6-

inform the insurance company. *Associated Elec. & Gas Ins. Servs., Ltd. v. Rigas*, 382 F.Supp.2d 685, 699-700 (E.D. Pa. 2004). In that case, the court again held that the insurance company had to advance costs, because the court could not determine at that time whether the insured persons did in fact have knowledge of the claims prior to applying for the insurance policy. *Id.* Finally, plaintiffs cited a case concerning insured persons who were being sued for actions taken both before and after the formation of the company that obtained the insurance policy. *Welch v. Agric. Excess & Surplus Ins. Co.*, No. 00 C 5725, 2001 WL 1155249, at*5 (N.D. Ill. Sept. 28, 2001). In that case, the court held that the policy must be read to cover the claims made in part for acts leading up to the formation of a new company, even though the policy only covered actions taken after the company was formed, since the complaint included claims based on actions taken after the new company's formation. *Id.*

The three cases plaintiffs cite do not compel the court to order Gulf to cover plaintiffs' defense costs even though Moore's claims fall outside of the policy's coverage. Instead, those cases support the R&R's finding that defense costs should not be advanced. In *Little* and *Rigas*, both courts ordered the insurance companies to advance costs because it could not be determined, at those points in time, whether the exclusions the insurance companies raised did in fact apply. In this case, the magistrate judge was able to make that determination, and the court agrees that Moore's claims are not covered. *Little* and *Rigas* may be read to create a kind of exception to the general rule of "no coverage, no duty to advance defense costs," in that if a court cannot then determine the question of coverage, then costs should be advanced. However, even if the court does read *Little* and *Rigas* in that fashion, this case would not fall within that exception, as the question of coverage may be, and has been, determined now. Therefore, because Moore's claims are not covered by the Gulf policy by reason of the cut-off date in Endorsement 13, Gulf is under no obligation to advance defense costs. Plaintiffs' objection is denied.

-7-

### **III. Conclusion**

For the foregoing reasons, the court denies the objections to the R&R [Docket No. 109] of LISN, Sanneman, Sowell and Vanke [Docket No. 111] and adopts the R&R in its entirety. Gulf's motion for summary judgment [Docket No. 67] is granted, and LISN, Sanneman, Sowell and Vanke's motion for partial summary judgment [Docket No. 65] is denied. Gulf's motion to bifurcate and stay [Docket No. 44], Gulf's motions to strike [Docket Nos. 69, 77, 78], and the Rule 56(f) motion by all plaintiffs [Docket No. 73] are therefore all denied as moot. Judgment is entered on all claims in the complaint in favor of Gulf, and the case is closed.

This order is final and appealable.

IT IS SO ORDERED.

                                               /s/Ann Aldrich
                                               ANN ALDRICH
                                               UNITED STATES DISTRICT JUDGE

**Dated: March 22, 2006**